Shearing, J.,
with whom Rose, J., agrees,
dissenting in part and concurring in part:
I agree with the majority of this court in affirming the amended judgment entered pursuant to jury verdict awarding damages to Susan Vaughn, Michael Anthony Bullard and Ricky Wayne Hammer. However, I disagree that the compensatory and punitive damage awards for tortious discharge to Bullard and Hammer were clearly erroneous.
Appellants argue, and the majority agrees, that in order to have a cause of action for tortious discharge, an employee must be terminated for having affirmatively acted in a manner consistent with public policy. Simply objecting to company actions which violate public policy is insufficient. This view of tortious discharge is unduly restrictive and fails to foster public policy objectives. It would be anomalous if an employer were free to terminate anyone who objected to an illegal policy, but could only be held liable for tortious discharge if the employee’s objection took the form of refusing an order. This encourages the employer to take the step of terminating, without fear of suit, anyone who objects to the illegal policy. Employees who disobey their supervisors’ orders when those orders violate public policy may be admirable, but such action, which virtually assures termination, should not be a prerequisite to a cause of action for tortious discharge. As the court stated in Holmes v. General Dynamics Corp., 22 Cal. Rptr. 2d 172, 181 (Ct. App. 1993):
[A]n employer who fires an employee for “exposing] to view” or “mak[ing] known” an employer’s illegal conduct plainly violates a “fundamental” or “substantial” public policy regardless of the militancy or the decibel level of the report and even if the employee has chosen not to actively oppose the illegal conduct. A contrary rule would provide corporate managers incentive to terminate an employee after the employee has reported illegal activity but before the employee has had the opportunity to “protest” such activity.
Bullard and Hammer argued, and the jury clearly agreed, that Bigelow Holding Company fired them because Bullard objected to the company policy of discriminating against African-Americans. Substantial testimony supports the finding that Bigelow had a long-standing policy of racial discrimination. *1191 Clearly, discriminating against tenants because of their race violates the public policy of this state. If an employee is terminated for objecting to such a policy, his termination is wrongful.
Bullard described his termination as follows:
Q. How were you terminated?
A. We had three black males came [sic] on the property. Carol Swenson radioed Donna Dollman [sic] on her radio— ... I told Carol that blacks had rights, too. Approximately five to ten minutes passed. Donna came into the office. Carol and Donna conversed. I don’t know what they said.
Donna walks up to where I’m sitting, picks up the piece of paper that I’m writing on, and she said, “What’s your fucking problem?”
I said, “I don’t have a problem.”
She said, “I think you do.” She said, “I think you’re a fucking nigger lover. Sit your God damn ass down on that fucking stool, shut your mouth, and do your fucking work.” Q. What happened next?
A. Then she said, “On second thought, get your fucking ass out of here. I don’t want you working for me anymore.” Q. And what was the time span between those two statements by Mrs. Dollman [sic]?
A. Not even 30 seconds.
Q. Why did you make the statement, “Blacks have rights, too”?
A. Because I knew that they were fixing to physically assault the black males to get them off the property.
The evidence indicates that Hammer’s termination was based on his friendship with Bullard. If Bullard went, Hammer had to go too. Hammer was terminated the following Monday when a number of people, including management personnel, appeared at the door of the apartment that Bullard and Hammer shared. Hammer testified that Millhouse handed Bullard and Hammer their respective checks and that thirteen people, including management personnel, security guards and maintenance personnel, then “stormed” the apartment and proceeded to pack Bullard’s and Hammer’s clothes and furnishings, threatened both Bullard and Hammer, and physically ejected Hammer from the apartment. Hammer testified, “I looked at Rick Clouse, and I said, ‘Why did you do this, Rick? What are you doing this for?’ And he told me he wanted Michael Bullard off this property; that they were going to kill him.” I believe that this evidence clearly demonstrates that the jury’s compensatory damage awards for both Bullard and Hammer’s tortious discharge should stand.
*1192 Bullard and Hammer were also entitled to the jury award of punitive damages. Appellants argue that because the jury chose not to assess punitive damages against Bigelow’s employees, the jury was precluded from assessing punitive damages against Bigelow. For compensatory damages, this may be true. See Thoma v. Gaspar, 89 Nev. 170, 171-72, 509 P.2d 967, 968 (1978). A corporation can only commit a tort through the actions of its agents. Here, the jury found that the agents of the corporation committed the torts and that the corporation was therefore liable for compensatory damages. However, the jury chose to assess punitive damages only against the company, which had the policy of racial discrimination, rather than against its employees who executed the policy. Assessing punitive damages against Bigelow is perfectly consistent with the public policy rationale behind awarding punitive damages.
Punitive damages are awarded to deter wrongful conduct which violates public policy. The jury could have concluded that Bigelow needed to suffer the financial burden of paying punitive damages to persuade it to change its policies. The employees would probably not be in a position to change company policies unless their employer authorized the change. The jury could also have taken into consideration the disparate financial conditions of the employees and the employer. The jury could have found that an award of punitive damages against the employees would bankrupt them, while an award against the employer would effectively punish the company and deter it from pursuing its policies of race discrimination. Therefore, the policy reasons for allowing punitive damages are better served by allowing assessment against the employer alone.
Accordingly, I would affirm the verdict of the jury in all respects.